```
          UNITED STATES DISTRICT COURT
           MIDDLE DISTRICT OF FLORIDA
                 TAMPA DIVISION
```

RICO BALCOM,

    Plaintiff,
v.                              Case No. 8:23-cv-1624-VMC-AAS

SEATTLE SERVICE BUREAU, INC.,

    Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendant Seattle Service Bureau, Inc.'s Motion to Compel Arbitration and Stay Lawsuit, filed on August 28, 2023. (Doc. # 17). Plaintiff Rico Balcom responded on September 11, 2023. (Doc. # 18). Seattle Service replied on September 27, 2023. (Doc. # 28). For the reasons that follow, the Motion is granted.

**I.  Background**

Mr. Balcom was an employee of Seattle Service from around February 2022 to February 2023. (Doc. # 1 at ¶¶ 5, 17). At the time when Mr. Balcom was hired, Seattle Service used Oasis Outsourcing, Inc. to administer a secure, online onboarding process for its employees. (Doc. # 17-1 at ¶¶ 1, 6). Mr. Balcom completed the onboarding process through Oasis. (Id. at ¶ 13(a)).

According to Luis Torres, PEO Systems & Project Analyst for Oasis, when a worksite employee first logs into Oasis's onboarding portal, he is required to provide information necessary for Form I-9. (Id. at ¶ 8). An employee can only review and sign required onboarding documents after entering this information. (Id. at ¶ 9). "The worksite employee is [then] asked to review and sign each document that is presented during the onboarding process, including the Employee Acknowledgement[s] document, which contains the Arbitration Agreement." (Id. at ¶ 10).

Mr. Balcom was thus required to accept the terms of the Employee Acknowledgements document, with the arbitration agreement, by clicking a button marked "Sign and Continue." (Id. at ¶¶ 11, 15, Ex. A). He completed the onboarding forms on February 16, 2022, between 4:31:02 PM EST and 4:36:05 PM EST. (Id. at ¶ 13(a)).

The arbitration agreement in the Employee Acknowledgments document states, in relevant part:

> In the event of a legal dispute between you and Oasis Outsourcing, LLC or an affiliated company (Oasis) or your Worksite Employer **arising out of or in connection with your employment, application for employment, or separation from employment** for which you are, were, or would be paid through Oasis other than a claim for workers' compensation benefits or unemployment benefits, you agree the following will apply:

>Mandatory arbitration. Arbitration is an alternative to going to court. It is often faster, less expensive, and more convenient than going to court but allows the same remedies that a court could grant. The US Supreme Court has held that employees may be required to arbitrate disputes under the Federal Arbitration Act, the law which applies to this agreement to arbitrate. **To the greatest extent allowed by law, ANY DISPUTE SUBJECT TO THIS DISPUTE RESOLUTION AGREEMENT WILL BE RESOLVED EXCLUSIVELY THROUGH BINDING ARBITRATION before a neutral arbitrator.** You may initiate arbitration by filing with the American Arbitration Association, JAMS, or another mutually agreeable neutral arbitration service. To the extent not inconsistent with this agreement, the rules of the neutral arbitration service for individual (not collective) employment disputes will apply. If required by law, Oasis or your Worksite Employer will advance costs of arbitration. The arbitrator will: Have the authority to determine whether a dispute is subject to this agreement to arbitrate; Be able to grant the same remedies as a federal court (but no more); Apply the Federal Rules of Evidence and any applicable statutes of limitation; Render a reasoned, written decision based only on the evidence adduced and the law; and Grant reasonable attorney fees and costs to the prevailing party if permitted by applicable law.

(Id. at Ex. A) (emphasis added). Seattle Service was Mr. Balcom's Worksite Employer. (Id. at ¶ 6). The Employee Acknowledgements document also describes the worksite employee's relationship with Oasis, stating that it is a "'co-employment' [relationship] because Oasis performs certain employment-related functions, but Oasis and [the] Worksite Employer are not joint employers." (Id. at Ex. A). It further

3

clarifies that the worksite employee does not "have [a] contract of employment with Oasis." (Id.).

On July 19, 2023, Mr. Balcom filed a complaint against Seattle Service. (Doc. # 1). In his complaint, Mr. Balcom alleges that he experienced discrimination based on his race and sex while employed by Seattle Service and that such discrimination and his complaints about it led to his termination. (Id. at ¶¶ 7-18). Specifically, he asserts claims of racial discrimination and retaliation in violation of Section 1981, as well as race and sex discrimination and retaliation in violation of Title VII. (Id. at ¶¶ 19-34).

On August 28, 2023, Seattle Service filed a Motion to Compel Arbitration and Stay Lawsuit. (Doc. # 17). Mr. Balcom filed a response on September 11, 2023. (Doc. # 18). Seattle Service filed a reply on September 27, 2023. (Doc. # 28). The Court stayed the case pending further order of the Court. (Doc. # 33). The Motion is ripe for review.

## II. Legal Standard

In enacting the Federal Arbitration Act ("FAA"), Congress set arbitration agreements on equal footing with all other contracts. 9 U.S.C. § 2. Once the Court is "satisfied that the issue involved . . . is referable to arbitration," it "shall . . . stay the trial of the action until such

4

arbitration has been had." 9 U.S.C. § 3. The FAA empowers a court to compel arbitration when a party fails or refuses to arbitrate. 9 U.S.C. § 4. Given the strong federal policy favoring arbitration, any doubt concerning the scope of arbitrable issues — or questions of waiver — are resolved in favor of arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983), superseded by statute on other grounds by 9 U.S.C. § 16(b)(1), as recognized in Bradford-Scott Data Corp., Inc. v. Physician Computer Network, Inc., 128 F.3d 504 (7th Cir. 1997). However, "no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate." Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999).

"[T]he FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2-4).

"Because the Court should apply ordinary state-law contract principles, the Court looks to [state] law to determine if there is an enforceable arbitration agreement."

5

Calton & Assocs., Inc. v. Simmers, No. 8:20-cv-851-VMC-CPT, 2020 WL 4751501, at *4 (M.D. Fla. Aug. 17, 2020). The Employee Acknowledgments document containing the arbitration agreement does not specify which state's law applies. However, both parties' briefs regarding this motion assume that Florida law applies. E.g., (Doc. # 17 at 3); (Doc. # 18 at 2).

"Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999).

"[C]hallenges to the validity of the arbitration clause in particular or to the very existence of the contract must be resolved by the court before deciding a motion to compel arbitration." Wiand v. Schneiderman, 778 F.3d 917, 924 (11th Cir. 2015) (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444-45 n.1 (2006)). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Financial Corp.-Ala. v. Randolph, 531 U.S. 79, 91-92 (2000).

### III. Analysis

First, the arbitration agreement within the Employee Acknowledgements document is "a valid written agreement to arbitrate." See Seifert, 750 So. 2d at 636. The agreement is written and compels arbitration of claims within its scope. See (Doc. # 17-1 at Ex. A) ("To the greatest extent allowed by law, ANY DISPUTE SUBJECT TO THIS DISPUTE RESOLUTION AGREEMENT WILL BE RESOLVED EXCLUSIVELY THROUGH BINDING ARBITRATION before a neutral arbitrator.").

Additionally, Seattle Service can enforce the agreement even though the company did not sign it. See Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368 (11th Cir. 2005) ("[W]hile the FAA requires that the arbitration agreement be in writing, it does not require that it be signed by the parties."); Ross v. Vacation Rental Pros Prop. Mgmt., LLC, No. 8:17-cv-16-RAL-JSS, 2017 WL 10276731, at *1-3 (M.D. Fla. Mar. 17, 2017) (allowing worksite employers to compel arbitration even though they "were not signatories to the arbitration agreement and Oasis [was] not a party to [the] case").

Further, the parties each provided sufficient consideration for the agreement. Mr. Balcom argues that the agreement is not enforceable because the disclaimer that the

7

worksite employee does not have a contract of employment with Oasis makes the agreement illusory. (Doc. # 18 at 3). However, this argument fails. "A contract is illusory under Florida law when 'one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor . . . .'" Princeton Homes, Inc. v. Virone, 612 F.3d 1324, 1331 (11th Cir. 2010) (quoting Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1311 (11th Cir. 1998)).

The disclaimer does not undermine the validity of the arbitration agreement by making Seattle Service's promise to arbitrate insubstantial. Instead, it only informs worksite employees that they do not have employment contracts with Oasis.

However, even if Seattle Service were not similarly obligated to submit claims to arbitration under the agreement, this would not invalidate the agreement under Florida law. "In Florida, one party's promise to submit its claims to arbitration typically provides sufficient consideration to support the other party's promise to submit its claims to arbitration." Tranchant v. Ritz Carlton Hotel Co., LLC, No. 2:10-cv-233-JES-DNF, 2011 WL 1230734, at *4 (M.D. Fla. Mar. 31, 2011). Yet, this is not the only

8

acceptable form of consideration. Instead, "consideration can be established by performance or a promise to perform." Id. In Tranchant v. Ritz Carlton Hotel Co., No. 2:10-cv-233-JES-DNF, 2011 WL 1230734 (M.D. Fla. Mar. 31, 2011), the Court determined that Defendant's "continued employment of plaintiff provided sufficient consideration to support the employment agreement and the arbitration provision contained therein." Id. at *4. As in Tranchant, Seattle Service's continued employment of Mr. Balcom served as sufficient consideration for the arbitration agreement.

Mr. Balcom also references caselaw addressing arbitration agreements and policy statements contained within employment manuals to support his argument. (Doc. # 18 at 3-4). However, this case does not present an analogous situation. The arbitration agreement is not contained within a handbook, but rather is in an onboarding document that Mr. Balcom was required to electronically sign. Additionally, the disclaimer does not similarly preclude enforcement of the arbitration provision as did the handbook statements in the cited cases. In fact, "an acknowledgement form may itself be the arbitration agreement, even though the acknowledged handbook '[i]s not a contract' where the 'arbitration language in the acknowledgement formed a binding contract.'"

9

Gustave v. SBE ENT Holdings, LLC, No. 19-23961-Civ-Scola, 2020 WL 5819847, at *3 (S.D. Fla. Sept. 30, 2020) (quoting Lemmon v. Lincoln Prop. Co., 307 F. Supp. 2d 1352, 1355 (M.D. Fla. 2004)).

The arbitration agreement at issue also closely resembles others enforced in cases by employers who have used Oasis for employee onboarding. E.g., Garcia v. Harmony Healthcare, LLC, No. 8:20-cv-1065-WFJ-AAS, 2021 WL 1610093, at *1, *6 (M.D. Fla. Apr. 26, 2021); Ross, 2017 WL 10276731, at *1-3. For all these reasons, the arbitration agreement is a valid, enforceable agreement.

Second, the claims asserted by Mr. Balcom fall within the scope of the arbitration agreement. The agreement applies to all "legal dispute[s] between [a worksite employee] and . . . [his] Worksite Employer arising out of or in connection with [his] employment, application for employment, or separation from employment for which [he is, was,] or would be paid through Oasis other than a claim for workers' compensation benefits or unemployment benefits." (Doc. # 17-1 at Ex. A). Mr. Balcom's complaint alleges claims of race and sex discrimination and retaliation in violation of Section 1981 and Title VII against his former employer, Seattle Service, based on the actions of Seattle Service's

10

employees during Mr. Balcom's employment and termination. (Doc. # 1 at ¶¶ 19-34). These claims fall within the scope of the arbitration agreement.

Third, Seattle Service has not waived its right to arbitrate these claims. The Motion to Compel Arbitration was the first filing by Seattle Service in this case and Seattle Service has not expressed any intention to waive arbitration since filing the Motion.

Therefore, Mr. Balcom must arbitrate his claims.

## IV. Stay

"By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3-4). Circuit precedent is also clear that actions should generally be stayed, not dismissed, pending resolution through arbitration. See Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698, 699 (11th Cir. 1992) ("Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration." (citing 9 U.S.C. § 3)). Therefore, the

action will remain stayed pending the conclusion of the arbitration proceeding.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Seattle Service Bureau, Inc.'s Motion to Compel Arbitration and Stay Lawsuit (Doc. # 17) is **GRANTED.**

(2) The case is referred to arbitration.

(3) The case will remain stayed and administratively closed pending arbitration.

(4) The parties are directed to file a joint status report by **June 20, 2024,** and every 90 days thereafter.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 22nd day of March, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

12